IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, DMD;<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF PITTSBURGH, *OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION*;  UPMC MEDICAL EDUCATION,  UNIVERSITY HEALTH CENTER OF PITTSBURGH,<br><br>Defendants. | Civil Action No. 24-656 |

**MEMORANDUM OPINION**

Plaintiff John Doe, DMD ("Doe") alleges that when Defendants—the University of Pittsburgh ("University"), UPMC Medical Education and University Health Center of Pittsburgh (hereinafter referred to together as "UPMC ME")—dismissed him from the University's Dental-General-Dental Anesthesiology Residency Program in 2023, they violated Title IX, violated the Fourteenth Amendment's guarantee of due process, breached his medical residency contract, and tortiously interfered with his existing and prospective economic advantage.  (Docket No. 1).  The University filed an Answer to the Complaint.  (Docket No. 12).  UPMC ME moves to dismiss all but Doe's Title IX claim against it in the Complaint.  (Docket Nos. 14, 15, and 17).  Doe opposes UPMC ME's partial motion to dismiss.  (Docket No. 16).  For the reasons explained herein, the Court will grant UPMC ME's motion.

## I.   BACKGROUND[1]

Doe is a licensed dentist who was accepted by the University's Residency Program in July 2019. (Docket No. 1 ¶¶ 8-9). On May 25, 2021, Doe and UPMC ME representatives executed a one-year contract concerning Doe's third year of residency: the UPMC Medical Education Postgraduate Training Agreement ("UPMC ME Agreement"). (*Id.* ¶ 11; Docket No. 1-2). The term of the agreement was July 1, 2021, through June 30, 2022. (Docket Nos. 1 ¶ 17; 1-2 at 1). Late into that term, in April 2022, Doe traveled to Atlanta, Georgia for a conference that was sponsored and/or promoted by the University and UPMC ME and that was also attended by other members of the Residency Program. (*Id.* ¶ 24). On April 28th, while at the conference, Doe had a sexual encounter with first-year resident Jane Roe ("Roe"). (*Id.* ¶¶ 25, 33). Doe alleges the encounter was consensual, but further alleges that Jane Roe represented to friends and others that it had not been consensual and that she authored a statement describing an alleged sexual assault by Doe. (*Id.* ¶¶ 38, 44).

Doe learned of rumors concerning the alleged sexual assault on April 30, 2022. (*Id.* ¶ 46). At that time, his Residency Program Director and Department Chair told him not to return to work, and a few days later he was contacted by the UPMC ME Vice President and UPMC ME HR Director to discuss the events that had taken place with respect to Roe. (*Id.* ¶ 47). Doe had a virtual meeting with the Vice President and HR Director that day—his request to have his attorney present for such meeting was denied. (*Id.* ¶¶ 48-49).

On May 9, 2022, Roe filed a Title IX Complaint wherein she alleged Doe raped her. (*Id.* ¶ 50). On May 12, 2022, the HR Director sent Doe a letter telling him that he was under

---

[1]   The Court draws the "Background" of this case from the allegations in Doe's Complaint, in line with this Court's obligation, at this point, to accept all facts alleged in the Complaint as true and to construe those facts in a light most favorable to the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

investigation for an alleged violation of a UPMC policy and that his paid administrative leave—effective May 1, 2022—would continue until the end of the investigation or June 30, 2022 (the end date of the UPMC ME Agreement). (*Id.* ¶ 51). This letter also informed Doe that if the investigation concluded in a finding that Doe violated policy in breach of his contract, he would be subject to discipline, which could include termination. (*Id.*). Doe was informed in the letter that he would be contacted once the investigation was complete. (*Id.*). As of June 30, 2022 (the end of Doe's contractual term), the investigation remained ongoing, so Doe's leave was changed from paid to unpaid administrative leave at that time. (*Id.* ¶ 53).

An investigation into Doe's conduct continued into the following calendar year. Doe alleges that both the University and UPMC ME were "involved in the investigation of Roe's Title IX Complaint against Dr. Doe." (*Id.* ¶ 52). He further alleges that the University and/or UPMC ME assigned Joseph Bielevicz ("JB") to investigate Roe's Title IX Complaint and that JB was an investigator with the University's Office of Compliance. (*Id.* ¶ 103). Doe alleges that this investigation was biased and that he was denied various rights, *e.g.*, the right to a live hearing. (*Id.* ¶¶ 105-06). In March 2023, JB concluded that, at the conference in Atlanta, Doe forced Roe into a hotel bathroom where he raped her. (*Id.* ¶ 107). Doe alleges that JB's conclusions in this regard went against the weight of the evidence and that JB ignored evidence that contradicted Roe's allegations. (*Id.* ¶¶ 111-66). Doe also alleges that the University and UPMC ME interfered with his defense by, *e.g.*, advising witnesses not to speak with Doe's counsel. (*Id.* ¶¶ 167-68).

After the investigation, on July 17, 2023, the HR Director who had earlier been in touch with Doe contacted him to inform him that he could no longer stay on unpaid administrative leave. (*Id.* ¶ 169). Because Doe had not completed his training program requirements before going on leave, the HR Director offered him three options: (1) Doe could accept certification of partial credit

for his training and terminate employment; (2) he could request justification for a waiver of his remaining rotation to attain program completion; or (3) Doe could reapply for the Residency Program for the opportunity to complete his last rotation. (*Id.* ¶ 170). Doe pursued the second option, but UPMC ME did not provide him with a certificate of completion, nor did UPMC ME respond to his July 23, 2023, request to pursue the second option. (*Id.* ¶¶ 175-76).

Then, in August 2023,[2] Doe received notice that he had been emailed a letter dated April 6, 2023, from the University's Vice Provost of Student Affairs informing Doe that the University's investigation of Roe's Title IX Complaint concluded in a finding that, based on a preponderance of the evidence, Doe violated the University's Sexual Misconduct Policy by committing sexual assault. (*Id.* ¶ 177). Accordingly, the University had dismissed him effective April 6, 2023. (*Id.*). The University Review Board denied Doe's appeal on October 3, 2023. (*Id.* ¶ 181). Doe alleges that because of these events culminating in termination of his residency and dismissal from the University, he suffered substantial harm. (*Id.* ¶ 182).

Based on the facts alleged, Doe avers in Count I of his Complaint that the University and UPMC ME engaged in sex discrimination in violation of Title IX by, *inter alia*, "conduct[ing] a flawed, superficial and gender-biased proceeding against Dr. Doe." (*Id.* ¶ 190). In Count II, Doe avers that the University and UPMC ME violated 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution when they deprived him of property (*i.e.*, continuation of his education as a student and member of the Residency Program) and liberty (*i.e.*, his reputation) without due process of law. (*Id.* ¶¶ 208-09). In Count III, Doe avers that he had a contract with UPMC ME that included not only his UPMC ME Agreement, but also the Title IX Policy and Procedure, the Sexual Misconduct Policy and Procedure, and the Student Code of

---

[2] Docket No. 1 ¶ 177 appears to erroneously refer to August 2022. Contextually, it appears that this is a typographical error, and that the numbered paragraph should instead begin: "In August 2023."

Conduct. (*Id.* ¶¶ 218-19). Doe avers that the University and UPMC ME violated those contracts as well as implied covenants of good faith and fair dealing by, among other things, terminating him and banning him from the University. (*Id.* ¶¶ 221-22). Finally, in Count IV, Doe avers that the University and UPMC ME intentionally interfered with his contractual relationships with UPMC ME and Great Lakes Ambulatory Anesthesia (GLAA), the latter of which offered him a contract that would have taken effect upon completion of Doe's residency training. (*Id.* ¶¶ 226-27). UPMC ME now seeks dismissal of Counts II, III, and IV, arguing that Doe fails to plausibly allege that UPMC ME is liable for violating his due process, breaching his contract, or intentionally interfering with existing or prospective economic opportunities/business relationships under prevailing pleadings standards.

## II.   STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in a complaint must be accepted as true and must be construed in the light most favorable to the plaintiff; the Court must also "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555). Moreover, while this standard does not require "detailed factual allegations," Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

5

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard is not so demanding as to "impose a probability requirement at the pleading stage." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III.  DISCUSSION

UPMC ME argues in support of the motion to dismiss Counts II, III, and IV of Doe's Complaint that Doe fails to include critical factual allegations in his Complaint to support those three claims. Doe's response to the UPMC ME's arguments for dismissal are specific to the individual claims; therefore, the Court below addresses them individually.

   A.   Count II – 42 U.S.C. § 1983 & the Fourteenth Amendment

The Fourteenth Amendment of the United States Constitution prohibits any state from "authoriz[ing] the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process." *Sample v. Diecks*, 885 F.2d 1099, 1114 (3d Cir. 1989). The rights conferred by the Fourteenth Amendment may be vindicated through Section 1983. *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 104 (3d Cir. 2014). To state a Section 1983 claim for violation of a federal right, a plaintiff must allege five things:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the [d]efendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 402 (M.D. Pa. 2013) (quoting *Sample*, 885 F.2d at 1113-14).

In this case, UPMC ME argues that Doe has not provided allegations to satisfy the first and fourth elements of a Section 1983 claim, *i.e.*, that he has neither adequately alleged a cognizable liberty or property interest, nor has he alleged that UPMC ME acted under color of state law. As for whether he has adequately alleged a liberty or property interest, Doe argues that his alleged interest in continuing his training in the Residency Program and in his underlying agreement with UPMC ME constitutes an adequately alleged property interest. And he also alleges a liberty interest in his reputation.

However, to have a protectable property interest in employment, "a person must have more than a unilateral expectation of continued employment; rather, [he] must have a legitimate entitlement to such continued employment." *Rosfeld v. Univ. of Pittsburgh - of Commonwealth Sys. of Higher Educ.*, No. 2:20-CV-225-NR, 2020 WL 2395000, at *4 (W.D. Pa. May 12, 2020) (quoting *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (explaining that the first step of a due process claim—determining whether a claimant has asserted a right that falls under the life, liberty, and property protections of the Fourteenth Amendment—requires looking at state law)). Even if the Court assumes that UPMC ME is a public employer, under Pennsylvania law, a public employer generally may not provide employees with protected interests in their employment, *e.g.*, "tenure status," without "express legislative authority for doing so." *Elmore*, 399 F.3d at 282.

In this case, "[t]he parties have not cited, and this court's independent research has not revealed, a Pennsylvania statute that would permit [UPMC ME] to grant employment to individuals serving as [residents] on anything other than an at-will basis." *Id.* at 283. Doe points to protections in the UPMC ME Agreement indicating that he could only be removed if, under Section 3(b) or 3(c) of the agreement, he failed to attain and retain requirements of training, was charged with or convicted of a serious misdemeanor or felony (or pleaded no contest), or was charged with serious misbehavior in any forum. (Docket No. 1-2). But such showing does not show that, as a matter of legislative grace, Doe had a protected interest in continued employment that would allow him to pursue his claim against UPMC ME for a deprivation of property rights without process under the Fourteenth Amendment. Additionally, to the extent Doe alleges interference with a liberty interest in his reputation, reputation in isolation is insufficient to support his claim. *Borrell*, 955 F. Supp. 2d at 404 (quoting *Dee v. Borough of Dunmore*, 549 F.3d 225, 233–34 (3d Cir. 2008)) ("But, a plaintiff may make out a due process claim for deprivation of a liberty interest in reputation by showing a stigma to his reputation plus deprivation of some additional right or interest." (internal quotation marks omitted)).[3]

---

[3] Because this Court has determined that Doe has not adequately alleged a protected interest with respect to UPMC ME, the Court need not address the parties' arguments concerning whether UPMC ME is a state actor. The Court here notes that it is only addressing in this opinion UPMC ME's motion to dismiss Doe's Section 1983 claim against UPMC ME, and not any claims against the University. In this Circuit, courts have recognized a property interest in a graduate student's "continuation of his course of study," which may be relevant to Doe's remaining claims. *Ross v. Pennsylvania State Univ.*, 445 F. Supp. 147, 153 (M.D. Pa. 1978); *Borrell*, 955 F. Supp. 2d at 395 (finding a property interest in continuation of education in the Nurse Anesthesia Program offered by Bloomsburg University's Department of Nursing in partnership with Geisinger Medical Center). However, with respect to UPMC ME, the Court finds cases about a right to continued education are distinguishable where Doe has not identified a protected interest in the continuation of his employment under Pennsylvania law.

B.     Breach of Contract

UPMC ME next argues that this Court should dismiss Doe's breach of contract claim in Count III of the Complaint. Breach of contract actions under Pennsylvania law have three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages." *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 266 (W.D. Pa. 2021) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)). Under the UPMC ME Agreement, Doe was allowed to terminate his agreement by providing 90-days' notice, and UPMC ME was allowed to terminate the agreement as follows:

> UPMC ME may terminate this Agreement immediately and without notice in the event Resident/Fellow Physician is … charged with serious misbehavior in any forum and of any type where inimical to the Residency/Fellowship Program or UPMC ME institutional standards (in the sole determination of UPMC ME leadership) before or during the term of this Agreement.

(Docket No. 1-2, UPMC ME Agreement, Section 3(c)). UPMC ME argues, based on that provision, that it could terminate the agreement once Roe accused Doe of sexual assault, *i.e.*, of serious misbehavior in a forum, without notice or process where the agreement provides that termination may be immediate and need not come with notice. This Court agrees.

Doe argues that his breach of contract claim should not be dismissed because the UPMC ME Agreement's references to being "charged" in a "forum" encompass only formal accusations in public or before a judicial body. For support, Doe cites Black's Law Dictionary (11th ed. 2019) and several specific meanings of "charge" and "forum" therein which he argues do not include Roe's allegation of wrongdoing in a confidential Title IX complaint/proceeding. However, as UPMC ME points out, courts interpret contractual terms according to ordinary meanings of those terms. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). The plain or ordinary meaning of "charge"

9

and "forum" encompass Roe's Title IX Complaint against Doe where a common definition of "charge" is "to bring an accusation against"[4] and a common definition of "forum" includes a "a place of jurisdiction."[5] Accordingly, the Court will dismiss Doe's breach of contract claim against UPMC ME in Count III of the Complaint.

        C.    <u>Intentional Interference with Existing or Prospective Economic Advantage</u>

UPMC ME lastly argues that this Court should dismiss Doe's tortious interference claim at Count IV because Doe has not alleged facts showing that UPMC ME *intended* to harm either an existing or prospective relationship. The elements of a claim of tortious interference with an existing or prospective contractual relation under Pennsylvania law are:

> (1) the existence of a contractual relation between [plaintiff] and a third party; (2) *purposeful action on the part of the defendant specifically intended to harm that existing relation*; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damage to the plaintiff as the result of the defendant's conduct.

*Barron v. Washington Cnty. Child. & Youth Soc. Serv. Agency*, No. CIV.A. 05-1517, 2006 WL 931678, at *6 (W.D. Pa. Apr. 11, 2006) (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1998)) (emphasis added).

In his Complaint, Doe alleges that he had an existing contractual relationship with UPMC ME and that he had an offer, *i.e.*, a prospective contractual relationship, with GLAA that would have been effective after he completed his Residency Program with UPMC ME. (Docket No. 1, ¶¶ 225-26). Doe further alleges that the University and UPMC ME "knew of the existence of these contractual and prospective relationships" and "acted with the intent of harming Plaintiff's

---

[4]     *Charge*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/charge (last visited 14 March 2025).

[5]     *Forum*, BLACK'S LAW DICTIONARY (12th ed. 2024).

relationship with UPMC ME" and his "prospective relationship with GLAA." (*Id.* ¶¶ 228-30). Doe alleges that the University and UPMC ME "knew that interference with these relationships was certain or substantially certain to occur because of their actions and/or omissions" as described elsewhere in the Complaint. (*Id.* ¶ 231).

These allegations of intent to harm Doe's existing and prospective contractual relations are conclusory and do not satisfy the requirement that Doe "must *plead facts* showing [the University and UPMC ME] intentionally 'induced or otherwise caused a third party not to perform the contract.'" *Am. Osteopathic Ass'n v. Am. Bd. of Internal Med.*, 555 F. Supp. 3d 142, 150 (E.D. Pa. 2021) (quoting *Charbonneau v. Chartis Prop. Cas. Co.*, 680 F. App'x 94, 99 (3d Cir. 2017)). Doe argues that his factual allegations in this regard are sufficient because Fed. R. Civ. P. 9(b) applies to his pleadings and indicates that he need only plead "[m]alice, intent, knowledge, and other conditions" of mind "generally." However, Doe is mistaken in his belief that Rule 9(b)'s standard of pleadings for a defendant's mental state applies to his tortious interference claims. As UPMC ME points out, Rule 9(b) by its express terms applies only to allegations of "fraud or mistake." *Id. See Suntuity Solar, LLC v. Roseburg*, No. CV2117801MASTJB, 2022 WL 2373982, at *3 (D.N.J. June 30, 2022) ("To start, Rule 9(b) applies to all of the Amended Complaint's fraud-based causes of action, *which include all but the tortious interference and defamation claims*." (emphasis added)). Accordingly, Doe's general allegations of intent for his intentional interference claim at Count IV are inadequate under applicable pleadings standards, and the Court will dismiss the claim.

## IV. CONCLUSION

For all these reasons, the Court will GRANT UPMC ME's partial motion to dismiss. As pleaded, Counts II, III, and IV in the Complaint do not state a claim on which relief may be granted

11

against UPMC ME.  That said, because it is not readily apparent to the Court that amendment would be futile, the Court's dismissal will be without prejudice.

*/s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: March 28, 2025

cc/ecf: All counsel of record